IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Laborers' District Council Pension and
Disability Trust Fund No. 2, et al., :

    Plaintiffs, :

v. : Case No. WDQ-13-0294

Parkinson Construction Company, Inc., :

    Defendants. :

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Default Judgment (ECF No. 13) filed by Plaintiffs, the Baltimore-Washington Construction and Public Employees, Laborers' District Council Defined Contribution Retirement Plan; Laborers' District Council Pension and Disability Trust Fund No. 2; the Laborers' District Council Health and Welfare Trust Fund No. 2 (the "Welfare Fund"); the Laborers' Joint Training Fund of Washington, D.C. and Vicinity (the "Training Fund") (collectively, the "Funds"); Justin Meighan, Trustee; and George Maloney, Trustee (collectively, the "Plaintiffs"), against Defendant Parkinson Construction Company, Inc. ("Parkinson"), along with Plaintiffs' supplemental filings in support to the Motion. (ECF Nos. 17 & 19). Parkinson has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2.a. On December 20, 2013, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Quarles referred this case to me (ECF No. 15) for a report and recommendation on Plaintiffs' Motion for Default Judgment. I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiffs' Motion for Default Judgment be GRANTED.

I. **FACTUAL AND PROCEDURAL HISTORY**

On February 4, 2013, Plaintiffs filed an Amended Complaint[1] (ECF No. 4) against Parkinson under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2) and 1145. Plaintiffs allege that Parkinson refused to comply with the Funds' payroll audit and "failed to submit other contributions owed to the Funds." (ECF Nos. 4 at 4 & 13 at 2). Plaintiffs claim that these failures violate the collective bargaining agreement ("CBA") to which Parkinson was a party. (ECF No. 4 at 3). On February 26, 2013, the Court entered an order (ECF No. 8) granting Plaintiffs' Consent Motion to Stay, permitting the parties to conduct the audit at issue, and allowing Parkinson to file an answer or other responsive pleading to the Amended Complaint within 21 days of the stay being lifted. On October 24, 2013, the Court entered an order (ECF No. 10) lifting the stay and directing Parkinson to file an answer or responsive pleading within 21 days. Parkinson did not file an answer or responsive pleading to the Amended Complaint. Upon Plaintiffs' request, the Clerk of the Court entered an Order of Default (ECF No. 14) on December 19, 2013. Plaintiffs filed the Motion for Default Judgment on December 18, 2013 and, consistent with the Court's Orders (ECF Nos. 16 & 18), Plaintiffs filed supplements to the Motion on January 2, 2014 (ECF No. 17) and March 31, 2014 (ECF No. 19). Parkinson still has not filed any response.

Plaintiffs contend that Parkinson was a party to a CBA and certain trust agreements that required Parkinson "to file timely monthly Employer Contribution Reports of hours worked by covered employees and to make timely contributions to the Funds for each employee covered" by the CBA. (ECF No. 4 at 3). The CBA and trust agreements also required Parkinson to "permit

---

[1] Plaintiffs filed their original Complaint (ECF No. 1) on January 28, 2013.

the Funds to conduct audits of its records to ensure that all hours worked by covered employees are properly reported to the Funds." (ECF No. 4 at 3). Parkinson was selected for a payroll audit by the Funds but "failed, neglected, omitted, and refused to schedule an audit." (ECF No. 4 at 4). After Plaintiffs filed their Amended Complaint, Parkinson ultimately agreed to comply with the audit. (ECF No. 13 at 2). The audit revealed that Parkinson "had underreported its contributions to the Funds by $31.73." (ECF No. 13-1 at 2). Thereafter, Parkinson "paid the amounts found due by the audit, [but] failed and refused to pay all other amounts owed to the Funds." (ECF No. 13-1 at 3). Plaintiffs seek a default judgment against Parkinson, as well as damages for the costs of the audit, liquidated damages and interest for Parkinson's delinquent contributions, attorney's fees and costs, and post-judgment interest.

## II. DISCUSSION

### A. Standard for Entry of Default Judgment

In determining whether to award a default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the court determines that liability is established, the court must then determine the appropriate

amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1.

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default judgment and the determination of damages. "If, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." *Sheppard Steel Co.*, 2012 WL 2446151, at *1. A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The court is not required to conduct an evidentiary hearing to determine damages, and may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B. Liability

Section 301 of the LMRA, 29 U.S.C. § 185, provides that suits alleging violations of a contract between an employer and a labor organization "may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Section 515 of ERISA, 29 U.S.C. § 1145, mandates that employers subject a multi-employer plan or collective bargaining agreement

4

"shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

According to the factual allegations contained in Plaintiffs' Amended Complaint, Parkinson was bound by the terms of a CBA and certain trust agreements. (ECF No. 4 at 3). Parkinson refused to permit Plaintiffs to audit its records to "ensure that all hours worked by covered employees are properly reported to the Funds," as the trust agreements required. (ECF No. 4 at 3-4). Such audits were expressly authorized by the Supreme Court in *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985). In addition, Parkinson failed "to file Reports with the Funds for any work month since August 2012, and . . . failed to make the required contributions to the Funds on behalf of its covered employees and to pay the required liquidated damages and interest for work performed by its covered employees during those months," as required by the trust agreements. (ECF No. 4 at 4-5). Accepting these factual allegations as true, I conclude that Plaintiffs have established that they are entitled to relief on their claims. Because Plaintiffs have stated a legitimate cause of action, I find that Plaintiffs are entitled to a default judgment against Parkinson. I recommend that the Court grant Plaintiff's Motion for Default Judgment with respect to Parkinson's liability.

**C.     Damages**

Having established Parkinson's liability, ERISA allows Plaintiffs to recover liquidated damages and interest owed to the Funds, as well as the attorney's fees and costs incurred in this litigation. *See* 29 U.S.C. § 1132(g)(2)(B)-(D). The Funds' trust agreements require delinquent contributing employers to pay liquidated damages and interest in the event that contributions are not timely paid. (ECF Nos. 17-3 at 5, 17-4 at 11 & 19-1 at 2). The trust agreements also permit the Funds to conduct audits (*see* ECF No. 17 at 4), and require an employer who is not compliant

with the Funds' request for an audit to pay the costs of the audit "regardless of whether or not the audit reveals that the employer owes any additional amounts to the Funds." (ECF No. 17 at 4).

In support of their claim for damages, Plaintiffs submit the Declaration of Jonathan G. Rose, Esq. (ECF No. 13-1). Mr. Rose states that the costs of the audit amounted to $2,092.50. Parkinson's initial non-compliance with the Funds' request for an audit permits the Funds to assess the costs of the audit against Parkinson pursuant to the terms of the trust agreements. (ECF No. 13-1 at 4). I recommend that the Court award Plaintiffs $2,092.50 to account for the costs of the audit.

In addition to the costs of the audit, Plaintiffs state that Parkinson is liable to Plaintiffs for liquidated damages and interest on delinquent contributions in the amounts of $1,020.81 to the Welfare Fund and $197.60 to the Training Fund, for a total amount of $1,218.41. (ECF No. 13-1 at 4). To explain how Plaintiffs calculated these figures, Plaintiffs have submitted the Declaration of R. Reneé Parenti (ECF No. 19-2). Ms. Parenti is the "Vice President and Account Executive of Carday Associates, Inc., which serves as the Plan Administrator" to the Welfare Fund, and "handles accounting matters, including processing employer reports and contributions and maintaining records of delinquent contributions" for the Training Fund. (ECF No. 19-2 at 1). Ms. Parenti's Declaration states that liquidated damages in the amount of 15% are assessed for delinquent contributions to the Welfare Fund, and that interest is assessed on late payments at the rate of 10% per year. (ECF No. 19-2 at 1-2). Liquidated damages in the amount of 15% of the amount owed or $20.00, whichever is greater, are assessed for delinquent contributions to the Training fund, in addition to interest at the rate of 10% per year. *Id*. Ms. Parenti's Declaration goes on to explain how Plaintiffs calculated liquidated damages and interest on delinquent contributions to the Welfare Fund and the Training Fund. (ECF No. 19-2 at 2-6). Having

reviewed Ms. Parenti's Declaration and Plaintiffs' calculations, I find that Parkinson owes liquidated damages and interest for delinquent contributions in the amount of $1,020.81 to the Welfare Fund and $197.60 to the Training Fund. These liquidated damages and interest account for Parkinson's delinquent contributions during the months of May 2012, June 2012, July 2012 and August 2012. *Id*.

Accordingly, I recommend that the Court award the following damages to Plaintiffs: (1) Plaintiffs' audit costs in the amount of $2,092.50; (2) liquidated damages and interest to the Welfare Fund in the amount of $1,020.81; (3) liquidated damages and interest to the Training Fund in the amount of $197.60; and (4) post-judgment interest pursuant to 28 U.S.C. § 1961.

### D. Attorney's Fees and Costs

Attorney's fees and costs are available in an ERISA action. 29 U.S.C. § 1132(g)(2). When a court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a lower court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

7

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for five to eight years may reasonably bill $165.00-250.00 per hour and lawyers admitted to the bar for fifteen years or more may reasonably bill $275.00-400.00 per hour. These hourly rates serve only as guidelines in determining the reasonableness of an attorney's hourly rate.

Throughout this litigation, Plaintiffs have been represented by Jonathan G. Rose, Esq. and Richard Siegel, Esq. Mr. Rose is a Partner with the law firm of Alston & Bird LLP who has been admitted to the bar for more than fifteen years. Mr. Siegel is a Senior Associate with the law firm of Alston & Bird LLP who has been admitted to the bar for more than five but fewer than eight years. Mr. Rose claims 1.5 hours at an hourly rate of $410.00 for a total fee of $615.00. (ECF No. 13-1 at 4). Mr. Rose states that he was required to communicate with Parkinson about a potential resolution of this case, to meet with Mr. Siegel about the case, and to review and revise his client's submissions to the Court. I find that the time Mr. Rose spent on this case is reasonable. Although Mr. Rose's hourly rate exceeds the guidelines set forth in the Local Rules, I find that 1.5 hours of Mr. Rose's work at $410.00 per hour is reasonable for his work in this case. I recommend that the Court award Plaintiffs attorney's fees for Mr. Rose' work in the amount of $615.00.

Mr. Siegel claims a total of 22.4 hours at an hourly rate of $395.00 per hour for a total fee of $8,848.00. (ECF Nos. 13-1 at 4-5, 17 at 6 & 19 at 2). The work Mr. Siegel performed includes compiling the information that served as the basis for the complaint, drafting the complaint, responding to Parkinson's contention regarding arbitration, coordinating the audit and reviewing its results, preparing the Motion for Default Judgment, and responding to the Court's requests for

supplementation of the Motion for Default Judgment. *Id*. I find that the time Mr. Siegel spent on this case is reasonable. Mr. Siegel's hourly rate exceeds the Court's guidelines, but these guidelines are not determinative. In other cases, judges in the District of Maryland have found that Mr. Siegel's hourly rate is reasonable, even though it is greater than the Court's guideline rate. *See Laborers' District Council Pension and Disability Trust Fund No. 2, et al. v. E.G.S., Inc.*, No. WDQ-09-3174, Paper No. 16 (D. Md. Apr. 22, 2010); *Plasterers' Local Union No. 96 Pension Plan v. Perry*, 711 F.Supp.2d 472, 2010 WL 686694, at *3 (D. Md. 2010). In light of these cases, as well as the factors set forth in *Robinson*, 560 F.3d at 243, I find that Mr. Siegel's hourly rate is reasonable. I recommend that the Court award Plaintiffs attorney's fees for Mr. Siegel's work in the amount of $8,848.00.

Finally, Plaintiffs incurred a total of $480.00 in costs, consisting of the $350.00 fee for filing their Complaint and the cost of $130.00 to serve Parkinson. I recommend that the Court grant Plaintiffs' request for costs in the amount of $480.00.

### III. CONCLUSION

In sum, I recommend that:

1. the Court grant Plaintiffs' Motion for Default Judgment (ECF No. 13);

2. the Court award damages to Plaintiffs in the amount of $3,310.91;

3. the Court award attorney's fees and costs to Plaintiffs in the amount of $9,943.00; and

4. the Court award Plaintiffs post-judgment interest at the statutory rate.

I also direct the Clerk to mail a copy of this Report and Recommendation to the Defendant at the addresses listed on Plaintiffs' Amended Complaint (ECF No. 4).

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

<u>April 3, 2014</u>　　　　　　　　　　　　　　　　　　<u>　　　　/s/　　　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　　　　　Timothy J. Sullivan
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge